UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN ELECTRICAL EMPLOYEES
HEALTH AND WELFARE PLAN, a self-funded
ERISA multiemployer fund, by LOYAL O'LEARY
and CHRIS GULBRANDSON, in their capacity as
Trustees,

                Plaintiffs,

            v.                                                  Case No._____

ROBYN J. SWANTZ and
GRUBER LAW OFFICES, LLC,

                Defendants.

## COMPLAINT

The Plaintiffs, Wisconsin Electrical Employees Health and Welfare Plan (the "Plan"), by two of the Plan's Trustees, Loyal O'Leary and Chris Gulbrandson (collectively, "Plaintiffs"), by their attorneys, for their complaint against the Defendants, James Fitman and Gruber Law Offices, LLC, state and allege as follows:

### NATURE OF THE ACTION

1. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, as amended. Specifically, this is an action for equitable relief to enforce the terms and preserve the assets of an employee welfare benefit plan's subrogation and reimbursement rights under the terms of the governing plan documents through imposition of an equitable lien by

agreement or a constructive trust on funds received or to be received by Defendant from a third party, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## JURISDICTION

2.   This Court has original and exclusive jurisdiction to hear this matter pursuant to ERISA § 502, 29 U.S.C. § 1132, and 28 U.S.C.§ 1331.

3.   Venue is proper in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is a judicial district where the Plan is administered, and, upon information and belief, where Defendant resides or may be found and some or all of the funds at issue are being held.

## PARTIES

4.   The Plan is a self-funded "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), whose office is located at 2730 Dairy Drive, Suite 101 Madison, WI 53718.  The Plan provides health and medical benefits to eligible employees of participating employers and their dependents. The Plan is a multiemployer plan within the meaning of ERISA §§ 3(2), 3(37) and 4001(a)(3), U.S.C. §§ 1002(2), 1002(37) and 1301(a)(3).  The Plan is established and maintained pursuant to the Labor-Management Relations Act of 1947, § 302(c)(5), 29 U.S.C. § 186(c)(5) ("LMRA").

5.   The Board of Trustees is the Plan Sponsor and Plan Administrator of the Plan. Plaintiffs Loyal O'Leary and Chris Gulbrandson serve on the Fund's Board of Trustees.  Mr. O'Leary and Mr. Gulbrandson each qualify as a "fiduciary" with respect to the Fund within the meaning of ERISA § 3(21), 29

U.S.C. § 1002(21). and are authorized to bring this action on behalf of all group Plan participants, enrollees and beneficiaries to enforce the terms of the Plan and protect the assets of the Plan under 29 U.S.C. §1132(a)(3) and federal common law.

6. Upon information and belief, Defendant Robyn J. Swantz resides at 1345 Scott Drive, Racine, Wisconsin, which is located within the Eastern District of Wisconsin.

## BACKGROUND

7. Robyn J. Swantz is or was a Plan enrollee, dependent and/or participant at all relevant times in the Plaintiffs' self-funded employee welfare benefit group health plan.

8. On or about June 3, 2011, Defendant Swantz was the driver of a motor vehicle and sustained serious injuries in a car accident in Oak Creek, Wisconsin.

9. Since the date of the accident, the Plan has paid $24,219.66 in medical treatment for Defendant Swantz, an amount which was vetted and stipulated to between the Plan and the attorney representing Ms. Swantz.

10. Defendant Gruber Law Offices, LLC represented Defendant Swantz in an intervenor personal injury lawsuit filed on March 24, 2014 against the tortfeasor and responsible parties, Bryan S. Michalek, State Farm Mutual Automobile Insurance Company and Acuity, A Mutual Insurance Company

3

("Acuity"), styled as *Robyn J. Swantz v. State of Wisconsin, Department of Health Services, et al.,* Milwaukee County Circuit Court Case No. 11-CV-16035.

11. "Board of Trustees Wisconsin Electrical Employees Benefit Funds" was named as a defendant in the personal injury lawsuit, but the Plan was not sued under its proper legal name nor was it joined properly as an involuntary plaintiff, which is contrary to the mandatory pleading rule for parties with subrogation and reimbursement interests under §803.03, Wis. Stats. The Plan filed an answer to the Intervenor Complaint reserving these defenses and affirmatively alleging, among other things, that the Plan, as a self-funded employee welfare plan created and governed by ERISA, is entitled to relief under the terms of the plan document and that Defendant Swantz's claims as to the Plan are preempted by the provisions of ERISA. A copy of the Answer and Affirmative Defenses to the Intervenor Complaint is attached to this complaint and identified as Exhibit A.

12. A jury rendered a verdict in the Milwaukee County Circuit Court action in favor of Ms. Swantz in the aggregate sum of $95,131.51, from which Defendant Swantz has or will receive $40,611.53 from a third party awarded specifically for past medical expenses. A copy of the jury verdict is attached to this complaint and identified as Exhibit B.

13. In timely motions after verdict filed with the Circuit Court, Acuity did not contest the jury award of past medical expenses, but asked the Court per stipulation of the parties to subtract the sum of $13,865.72 it made in medical

4

payments, leaving an uncontested balance of past medical expenses awarded to Defendant Swantz of $26,745.81.

14. In timely motions after verdict filed with the Circuit Court, Defendant Swantz did not contest the jury award of past medical expenses, but rather only the jury award for future medical expenses.

15. On November 14, 2011, Plan participant Andrew Swantz and plan beneficiary Robyn J. Swantz signed a Subrogation and Reimbursement Agreement which reiterated the Plan's equitable lien by agreement and required them to reimburse the Plan on a first dollar, priority basis should Ms. Swantz recover money from any source relating to the personal injury claim. A copy of the executed Subrogation and Reimbursement Agreement is attached to this complaint and identified as Exhibit C.

16. Upon information and belief, Mr. and Mrs. Swantz signed the written Subrogation and Reimbursement Agreement with the advice and counsel of Attorney Timothy Knurr, who is now a principal, shareholder and/or partner of Defendant Gruber Law Offices, LLC.

17. Since the rendering of the verdict, Defendant Swantz remains eligible as a dependent under the Plan and has continued to use the Plan to pay for her accident related treatment and to procure write-offs and adjustments of her medical providers' full charged amounts for services.

18. Medical experts testifying on behalf of Defendant Swantz at deposition and at trial opined to a reasonable degree of medical probability that

Ms. Swantz will require future medical treatment that will cost an estimated $450,000 and are expected to be billed to the Plan if Defendant Swantz's motion after verdict is denied.

19. The Plan has subrogation rights and the right to reimbursement from any recovery received by, or paid on behalf of, Defendant relating to her June 3, 2011 accident injuries.

20. If the Defendants fail to reimburse the Plan from the jury award there will be a violation of the Plan's "Rules and Regulations" which is its governing plan document which meets all ERISA requirements. A copy of Section 11.13 Subrogation and Reimbursement of the Plan's Rules and Regulations, adopted by the Trustees of the Wisconsin Electrical Employees Health and Welfare Plan, effective August 1, 2008, is attached to this complaint and identified as Exhibit D.

21. The express terms of the governing plan documents for the Fund sets forth the Fund's subrogation rights and right to reimbursement as follows:

11.13 Subrogation and Reimbursement.

(a) Plan's Right to Subrogation. To the extent of any payments the Plan makes or may be obliged to make for a claim ("Claim"), the Plan shall be subrogated to all rights of recovery of a Participant, his or her parent(s) and dependent(s) or a representative or guardian or trustee of the Participant, parent(s) or dependent(s) (collectively referred to as "Claimant") relating to the incident. **The subrogation right applies to any recovery, whether by suit, settlement or otherwise, whether partial or full recovery and regardless whether Claimant is made whole, from any source liable for making a payment relating to the injury, illness or condition to which the Claim relates ("Source"). A Source includes, but is not limited to, a responsible party and/or a responsible party's insurer (or self-funded**

6

**protection), no fault protection, personal injury protection, financial responsibility, uninsured or underinsured insurance coverages, as well as medical reimbursement coverage purchased by the Claimant or any responsible party.**

        (b)    <u>Right of Reimbursement</u>.  **The Claimant shall first reimburse the Plan for all payments the Plan made or may be obliged to make for the Claim from any recovery from any Source, whether by suit, settlement or otherwise, including partial or full recoveries and regardless whether the Claimant is made whole.  Once the Plan makes or is obligated to make payments on behalf of the Claimant, the Plan is granted, and the Claimant consents to, an equitable lien by agreement or a constructive trust on the proceeds of any payment, settlement or judgment received by the Claimant from any Source.**

        (c)    <u>Enforcement of Rights</u>.  **The Plan has the right to recover amounts representing the Plan's subrogation and reimbursement interests under this section 11.13 through any appropriate legal or equitable remedy, including but not limited to the initiation of a collection action under ERISA or applicable federal or state law, the imposition of a constructive trust or the filing of a claim for equitable lien by agreement against any Claimant for recovery from any reimbursement interests, and rights to legal or equitable relief, take priority over the interest of any other person or entity.**

Further, where the Claimant or its agent receives a recovery from any Source but does not reimburse the Plan, the Plan shall have the right to reduce future benefits on the claims submitted by the Participant and Eligible Dependents associated with the Claimant or reduce the amount of the dollar bank until the Plan has recovered the full amount allowed under this section 11.13.

        (d)    <u>Action Required of Claimant</u>.  If requested in writing by the Trustees, the Claimant or the Claimant's authorized representative shall take such action as necessary or appropriate to recover any and all payments made or to be made by the Plan.  If a Claimant fails or refuses to take such action, the Plan shall be entitled to do so in the Claimant's name against any Source liable therefor.

**The Claimant shall hold in trust for the Plan's benefit that portion of the total recovery from any Source which is due for payments made or to be made by the Plan.  The Claimant shall reimburse the Plan immediately upon recovery.**

The Claimant must not do anything to impair, release, discharge or prejudice the Plan's rights to subrogation and/or reimbursement.  The Claimant shall assist and cooperate with the representatives the Plan designates.  The Claimant shall do

7

everything necessary to enable the Plan to enforce its subrogation and reimbursement rights. The Trustees may also require that a Claimant execute a subrogation and reimbursement agreement, in a form acceptable to the Trustees, as a condition to receiving benefits for a Claim. Any claim relating to the Claim which is first received by the Plan after a recovery, regardless of when the claim is incurred, shall be the responsibility of the Claimant to the extent of the Claimant's net recovery and shall be paid by the Claimant and not the Plan. In the event the Plan inadvertently provides benefits for such a claim, the Claimant shall have an obligation to repay the Plan to the extent of the Claimant's net recovery. The Plan has the enforcement rights set forth in subsection (c) of this section 11.13 to recover such amounts.

      (e)    Attorneys' Fees. **The Plan specifically disavows any claims the Claimant may make under the common fund doctrine.** This means that the Plan shall not be responsible for any of the Claimant's attorneys' fees or costs incurred in seeking a recovery, whether by suit, settlement or otherwise, unless the Plan has agreed in writing to pay such fees or costs.

      (f)    Trustees' Right to Waive. The Trustees of the Plan may waive the above subrogation or reimbursement rights or any part thereof, if they decide such action is in the best interest of the Plan and its participants, unless determined to be acting in an arbitrary and capricious manner.

(Emphasis added.)

22. The Plan has consistently advised Defendant of its subrogation and reimbursement rights in this matter. The Plan has also requested that Defendant comply with the express terms of the governing plan documents and give to the Plan the full amount of the recovery in the State Circuit Court action award or any other identifiable funds held in her possession that were or are to be received as payment from a third party relating to her injuries and that reflect the amount of the Plan's equitable lien by agreement.

23. Based upon the provisions of ERISA and the Plan's governing plan documents, the Plan is entitled to receive full reimbursement of the $24,219.66

8

32749260
Case 2:15-cv-01147-JPS   Filed 09/23/15   Page 8 of 11   Document 1

that the Plan paid as medical benefits for Defendant from the funds created upon jury verdict award in the State Circuit Court action.

24. Defendants' stated refusal to fully reimburse the Plan and failure to cooperate, as well as any refusal to retain the Plan's funds in Defendant Gruber Law Offices, LLC's trust account will constitute separate violations of the Plan's Rules and Regulations.

## Count 1

### (Enforcement Of The Terms Of The Plan Documents – Equitable Lien By Agreement and Constructive Trust)

25. Plaintiffs incorporate by reference Paragraph 1 through 24 as though fully stated herein.

26. Pursuant to 29 U.S.C. §1132(a)(3), ERISA §502(a)(3), the Plaintiffs seek equitable relief against the Defendants to enforce ERISA and the written terms of the Plan.

27. Upon information and belief, Defendants are or will be in actual or constructive possession of awarded proceeds via jury verdict or settlement and are therefore in possession of funds that as a matter of equity and good conscience belong to the Plan.

28. At all relevant times, the Defendants were placed on notice of their obligations and the Plan's rights pursuant to the written terms of the Plan, and in particular the "Subrogation and Reimbursement" provision in the governing plan

9

documents for the Plan which specifically identifies a particular fund and a particular share of that fund to which the Plan is entitled.

29. Defendants have indicated in documents filed in the State Circuit Court Action that the Plan is not entitled to the funds awarded by the jury for past medical expenses, despite the written provisions of the Plan. This refusal violates the terms of the Plan and ERISA. The Plan is entitled to equitable restitution in the form of a constructive trust or equitable lien by agreement with respect to the disputed funds that are held in the Defendants' actual or constructive possession.

30. Defendants should be ordered to turn over to the Plan the funds awarded for past medical expenses in their actual or constructive possession (up to the amount of $24,219.66, the benefits advanced by the Plan on Defendant Swantz's behalf) in order to enforce the written terms of the Plan and ERISA.

**WHEREFORE,** Wisconsin Electrical Employees Health and Welfare Plan (the "Plan"), by two of the Plan's Trustees, Loyal O'Leary and Chris Gulbrandson request the Court to:

A.) For service upon the Defendants as required by law;

B.) An order imposing a constructive trust and/or equitable lien in favor of the Plan upon any awarded funds in the Milwaukee Circuit Court action or in the event that the parties to that action enter into a settlement before the court process is exhausted;

C.) An order enjoining the Defendants from dissipating any of the funds held in their actual or constructive possession until the Plan's rights can be adjudicated;

D.) An order enjoining the Defendants from transferring or disposing of any awarded funds which would prejudice, frustrate or impair the Plan's ability to recover same;

E.) An order awarding to the Plan reasonable attorney's fees and costs incurred herein, pursuant to 29 U.S.C. §1132(g)(1) and in accordance with the "Subrogation and Reimbursement" provision of the Plan's Rules and Regulations (Section 11.13); and

F.) Other and further equitable relief to which the Plan may be entitled.

Dated at Milwaukee, Wisconsin this 23rd day of September, 2015.

Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965

Philip R. O'Brien
WI State Bar ID No. 1015549
pobrien@reinhartlaw.com
Jennifer L. Naeger
WI State Bar ID No. 1084165
jnaeger@reinhartlaw.com


BY s/Philip R. O'Brien
    Attorneys for Wisconsin Electrical
    Employees Health and Welfare Plan